22-2480 Lewis v. Warden James T. Vaughan Correctional Center. Take your time to get settled, and Mr. Harvey, whenever you're ready. Good afternoon, Your Honors, and may it please the Court, Matthew Harvey of Morris Nichols Arshton Tunnel on behalf of the appellant Richard Lewis. For the record, I'd like to reserve four minutes of my time for rebuttal. Thank you. The issue before the Court today is whether Richard Lewis's appellate counsel was ineffective for failing to present constitutional or statutory challenges to the admission of out-of-state GPS evidence in his direct appeal. For the most part, the evidence presented at Mr. Lewis's trial was circumstantial at best, but with a crucial exception I'll get into. The evidence focused extensively on the nature of the crimes that were committed, and the evidence that, in fact, crimes were committed, but very little on Mr. Lewis's connections to those crimes. But as I mentioned, there was crucial exceptions to the otherwise very circumstantial nature of Mr. Lewis's connection to the case, and it was those exceptions, those missing puzzle pieces to the State's case that are at issue here, and that create the habeas claim here. But, Mr. Harvey, isn't the real issue here whether the Delaware Supreme Court opinion was contrary to clearly established law, or was an unreasonable application of clearly established law? How do we have that here? You're right. Yes, Your Honor, it is exactly the issue here as to whether it was contrary to clearly established law. But I think it's important to go into what happened, and what the Delaware Supreme Court reviewed on direct appeal, and then what the Delaware District Court, whose decision is on review here, looked at and didn't look at. What's the clearly established law? Established by the Supreme Court of the United States.  We have, there's no challenge that the placing of the tracker was authorized by the warrant, correct? No challenge. And there's no challenge that the tracking within Delaware was also authorized by the  No challenge to that. So this is distinguishable from Jones, the situation where, you know, Jones avoided saying, is there a mosaic? Can we put these things together? This one is, if you have a valid device in place, and you had valid tracking within Delaware, do you violate the Fourth Amendment if you fail to stop tracking when you hit the border, given that there's a statute on the books? Now you've got an Ohio case that sort of leans your way. The other side has a Seventh and Eleventh Circuit case. None of that is established by the Supreme Court of the United States. Well, the clearly established Supreme Court law here is Strickland. Strickland versus Washington. It's to the ineffective assistance of counsel. Embedded with that, within the analysis, is the Fourth Amendment question, because it goes to the state's argument against us here, that even if the Delaware Supreme Court were to have approached this issue, they either, number one, would have found it was not a constitutional violation, or had they found it a constitutional violation, that it was harmless error, because there was sufficient evidence, even excising it. But if the question is this unclear, how can it be unreasonable application, given that you've got a state case that goes your way, the other side has two federal circuit cases that go its way? If the Delaware courts thought, this is just a loser argument that just, maybe eventually it'll become clear such that anything to the contrary is unreasonable, but it's not. It's not at that stage yet. Well, I think it's important to distinguish between what happened on the direct appeal and then what happened in the habeas proceedings, the state habeas and then the federal habeas proceedings. The question about the ultimate issue on the Fourth Amendment question was never confronted by the Delaware Supreme Court. They acknowledged, just as the trial judge below acknowledged that that was a thorny issue. It was an issue of first impression in Delaware as to whether that violated the constitution, the continued monitoring out-of-state tracking. But on the Strickland analysis, or sorry, not on the Strickland, what the Delaware Supreme Court never did is they never got to the Fourth Amendment issue because they found that it was waived on appeal. The state will say it was also, the question that's been certified to the court today is whether appellate counsel was ineffective for failure to raise these constitutional challenges in the direct appeal. Part of what the state is going to tell you is that appellate counsel could not have been ineffective because their hands were tied by trial counsel who failed to preserve those issues. And because of trial counsel, of course, who failed to preserve those issues, they could not have been asserted on appeal and therefore to be trials counsel, which is not the issue before today. But our contention is, is that the trial counsel did adequately preserve these issues. Trial counsel filed a motion to suppress that referenced the Fourth Amendment, referenced Jones and the other precedent that we're talking about from these other cases. There was an hour and a half long suppression hearing, either on the day of trial or the day before the trial. It's a 60 page transcript at which the words Fourth Amendment or constitution are mentioned 28 times. And during that hearing, the state had joined issue in its opposition to the suppression motion. The counsel to the defendant, trial counsel to the defendant, did a valiant effort to try to get the court to focus on the Fourth Amendment issues. And it's very evident from the transcript that for whatever reason, seemingly to keep the trial on track, the trial court simply did not want to confront the constitutional issues. He called them interesting, intriguing, provocative, difficult. And he said, sui sponte, no party had briefed the attenuation doctrine, but sui sponte, he said, I have a hunch, trial court's words, I have a hunch I can avoid this constitutional, this thorny constitutional issue by reference to the attenuation doctrine. And that's what he ultimately did. But doesn't it come down to, you need to say that there, that counsel was deficient for failing to raise on appeal a novel theory that had never been raised or decided in any court. What case would support that proposition? We can quibble, Your Honor, with whether it was sufficiently novel that it shouldn't have been waived, but you don't need to get here, because in 2000, this court in United States versus Menino said that it's not an issue of whether it was a failure to anticipate a change in the law, where below in the trial court, the issue was raised, was preserved, was evident from the trial record, and an appellate counsel with no good strategic reason simply failed to raise it on appeal. But in that case, there was a change in the law that wasn't anticipated here. This argument has no legs at all, that somehow a warrant issued for GPS that's on the car in one state somehow goes to another state, and therefore monitoring is unconstitutional. I mean, it's admittedly novel. It's not just that the law changed so that that is a problem. There's no law at all to support that. We disagree that there's no law to support it. There's no law in this jurisdiction. There's no law in Delaware. There's no law in the Third Circuit. You have some stuff you can cite from Ohio. That's enough? A state decision is enough to make it unreasonable? In ordinary circumstances where it was not presented, if this was trial court, the trial court counsel had failed to present these issues. One might say that this was not sufficiently obvious, and therefore it was not unreasonable and didn't fall below the standard of conduct for trial counsel for an effective system to counsel case not to raise these issues in the trial court. The trial court, in fact, raised these issues, cited the relevant cases, attempted for an hour and a half to get the judge to even listen to the arguments at the trial court level. Let's say it's been raised and it was preserved at trial. Strickland has a strong presumption of effectiveness, and we tend to say, you know, if it could have been tactical, you know, appellate counsel is under no duty to raise all issues. Why is this obviously a better argument than the one that appellate counsel, in fact, pressed? Because it is reasonable for counsel to press some arguments and not others. You have to show that just outside the broad bounds of professional competence, they chose to press something that was clearly a worse argument than this one. Totally agree with that, Your Honor, and appellate counsel presented three arguments effectively, all of which were presented below. They presented just a general probable cause argument that these search warrants that gave rise to the case lacked sufficient probable cause, presented a statutory challenge to the issuance of the warrant related to the out-of-state tracking, and then presented the constitutional challenge. On appeal, the Supreme, Delaware Supreme Court found that appellate counsel failed to preserve adequately that constitutional challenge, pressed only the probable cause. There was sufficient, they were obviously weaker there, including the Delaware Supreme Court's comments itself that he essentially repeated those issues verbatim. When they got to the Constitution, I could talk in a minute substantively why they were less meritorious or significantly less meritorious or significantly weaker. But when they got to the constitutional argument, they have an extended discussion of all the intricacies of that argument and how difficult it is and intriguing it is, just as the trial court did, and then say, but it's been waived here on appeal. So we think that that argument is clearly stronger, and it was stronger for purposes of the question here is whether the Supreme Court, had they confronted that on the merits, whether they would have remanded, because the question is, would they have remanded on appeal, not ultimately, would he have prevailed at trial? That's why the probable cause argument lacked merit compared to the constitutional arguments. There was most of the probable cause that went into this, into the search warrants, which were what were being challenged by the probable cause argument, most of the probable cause there existed prior to the tracking, even beginning. I want to ask you about the direct appeal opinion. The Delaware Supreme Court said in response to the Delaware constitutional claim, they said, quote, the GPS warrants did not authorize monitoring of the GPS beyond the jurisdictional limits of Delaware. So they reviewed what happened, right, here, the application said, let us monitor inside Delaware and outside, the magistrate who signed off on it didn't specify, and now the Delaware Supreme Court has decided, as a matter of law and fact, that the GPS warrants did not authorize the extraterritorial monitoring. So we have a warrantless search beyond Delaware, what is the significance of that with relation to your claim? I think that's a key part of our claim, that if you go back and we cite some of these cases going back to the founding and what was permissible or not under the Fourth Amendment, and going back to those very old cases, which I don't have at the top of my head, but are in our brief, a warrant that was issued without authority by a magistrate, it was outside the territorial jurisdiction of the magistrate, is effectively no warrant at all, and what is obtained through that use of that warrant. But this is a valid warrant, this is just, if it counts as a search to keep monitoring, this is beyond the bounds of the valid warrant. Correct, which is why we did not, with the statutory challenge to the warrant itself, because the warrant simply said install the warrant on a vehicle in the state of Delaware, the warrant affidavit specifically requested authority to track and monitor the vehicle as it left the state of Delaware and returned to the state of Delaware, included that, included the extraterritorial tracking, the warrant did not authorize that, it was just completely silent on it. So we think the warrant was within the statutory authority, it was the monitoring and then use of that monitoring against the defendant that violated his Fourth Amendment rights. And so the clearly established law that you're relying on is the law that one generally must have a warrant to conduct a search, right? In terms of the embedded Fourth Amendment issue, yes. I mean, ultimately, we're going back to the Strickland Standard, which is the clearly obvious review, which is that Strickland said, was it unreasonable? And if you look at this court's decision in Menino, the court said, whatever, whether or not it was an anticipated change in the law, the issue we were going to raise on appeal, when it was raised below, and it's obvious from the record, an appellate counsel fails to bring that with no good reason, that falls below the standard of counsel. And that is objectively unreasonable under the court's decision in U.S. v. Menino from 2000. Could you address the prejudice prong? I think you were starting to do that when you started your argument to talk about whether there was other evidence that would have pointed without all the New York. And there was a lot, wasn't there? There was a lot of circumstantial evidence. There was a lot of, and if you go and you read the trial transcript, there was a lot of evidence about what the crime scenes looked like, what was stolen. There was no DNA evidence linking Mr. Lewis to any crime. There was no video footage of him at any of the thefts or burglaries. There was, at best, there was surveillance footage of vehicles that resembled the vehicle he was driving in the vicinity of the burglaries around the time that they were, but there was no positive ID of Mr. Lewis at any of those cars. No, but there was his MO, and the fact that he had done this before, and his Lexus visited the Delaware storage facility, and jewelry, stolen jewelry was recovered at the residence shared by his girlfriend and her sister, I mean, it's like where there's smoke, there's fire. There was a lot of circumstantial evidence, though, because the state of Delaware, when they were presenting their evidence, they tracked him to the facility and there were physical eyes on him of officers surveying him, but all they ever do is saw him enter the facility. They never saw him enter the storage unit. They never found his DNA there. They never had video surveillance of him going there. They didn't have an eyewitness placing there. But that's the case in a lot of, I mean, you know, I watch forensic files, but there wasn't DNA and eyewitness identification in most situations. Well, and that was a point the state made, you know, not every case is CSI and not every case is there's DNA evidence, but they didn't have it at any of the crime scenes. They didn't have it at the storage facility where they found the bulk of the stolen property. What they had was his vehicle or some, it wasn't even his vehicle because they didn't have license plates on it. And these all happened before they got a tracker. They had a vehicle in the vicinity of these crimes that resemble the vehicle. They never positively ID'd him in those vehicles as being the driver. And in fact, one of the robberies or burglaries, there were two people in the vehicle and totally unexplained at trial was who that other person was. And in fact, some of the evidence they said where a car like his was, for lack of a better term, casing neighborhoods in advance of these robberies. No one ever identified Mr. Lewis. The only time anyone identified Mr. Lewis at trial in connection with any of the actual burglaries was one of the victims met Mr. Lewis on a bike a month prior to the robbery and had a brief conversation with him. Well, what about the woman who saw, who identified him as the person she saw through her window when she woke up after hearing a noise? That's for the attempted burglary. So for the attempted burglary, there was a direct identification that wasn't the product of the out of state, although only arguably it was not the product of that. And there's a couple of flaws of that. One, that woman did a sketch. She went to the police station a day or two after it, and there was a sketch drawn. And she rated that sketch an 8 out of 10 as reflecting 80% sure that that was the man that she saw in her window. Now, she didn't see much of him because she said everything was covered by his tightly john hood, and it was a two to three second encounter. But she came away from that sketch 80% certain that that was who she saw. That was in May of 2015. October of 2015, he's arrested. The picture makes the front page news. A friend of hers who had been burglarized, allegedly by Mr. Lewis, sent her the picture and effectively said, is this the man you saw? And that, according to her, was a eureka moment. And at trial, she said she was 10 out of 10, 100% certain it was him. But there was, given the prior identification, if you read the trial record, it's clear that that sketch looked nothing like Mr. Lewis, right? That there's a substantial doubt there. And that was the only identification of him that was not obtained from the out-of-state tracking. The identification of the employee at the storage facility at all affected by the extraterritorial one? It was directly the result of the extraterritorial tracking. And this is something the trial judge actually got wrong when he was trying to come up with the attenuation doctrine on the fly that neither party had briefed. Early in the investigation, the investigating detective here put out a request on what's called the Tri-State Investigators Network. And someone in West Goshen Township or East Goshen Township contacted him and said, I arrested someone by the name of Richard Lewis several years ago with an MO similar to what you're describing. He's been released from prison recently. And that's one of the ways in which the detective pieced together that Richard Lewis was his suspect. That is not where the information from New York came from. The information New York came from after the tracking device gets attached to Mr. Lewis's Lexus, a night later in, I believe it was June of 2015. It was June 2nd or June 4th of 2015. The detective sees that that car that's been associated with Mr. Lewis, although nobody sees him in it, is sitting in a commercial area next to a wealthy residential in Villanova, Radnor area at about midnight. And he calls the Radnor Police Department and he says, I believe I have this perp or this suspect who I'm investigating. And I believe he's about to carry out a robbery under his MO. They put eyes on the car. And given, again, more circumstantial evidence, although, of course, this is all a result of the out-of-state tracking, they never actually see him there. Someone else comes and picks up the car the next day, who they later determined was his girlfriend, right? But whoever burglarized that house in Villanova, and he was never charged with that here in Delaware, they're not at issue, took a car from that that was later recovered. But that established a contact between the Delaware Police and the Radnor Police. And in the Radnor Police, in connection with investigating their burglary, their victims found two pieces of distinct jewelry on a page associated with a company called Metals New York on an eBay page. That detective called the Delaware detective and said, you might want to check the eBay page. They checked the eBay page. They found two pieces of jewelry associated with, I believe it was the June 17th robbery. This was now late July. And Detective DiDardo, the Delaware detective, looked at that page with his victims, determined two pieces of unique jewelry were on there that they thought belonged to those victims. And then he went up to New York, interviewed the store owner, showed him a picture of Richard Lewis. And in fact, the store owner had made photocopies of Richard Lewis's Pennsylvania driver's license. And that was the evidence that put anything in Richard Lewis's hands. Otherwise, everything they found that was allegedly stolen by Mr. Lewis, they had no direct evidence of. That was the direct evidence. And that had two crucial effects here. Number one, again, being the only direct evidence, they put, for lack of a term, the smoking gun in his hand, positively ID'd. That gentleman came down and testified at trial. He testified that Mr. Lewis, in close proximity to other burglaries, had come up there and pawned jewelry with him. That's a little more circumstantial because they didn't tie to it. But that direct evidence also had, and this is the prosecution's words, they said that Mr. Lewis was methodical and covered his tracks. So all they had were pieces of the puzzle. And this was the evidence that pulled the pieces of the puzzle together, intended to give credence and corroborate the otherwise very circumstantial evidence, at best, circumstantial evidence. And so we think that this was highly prejudicial to be allowed in a trial because it effectively took a case that was based a lot on inference and conjecture. And the best the state could say was that Mr. Lewis, not even Mr. Lewis himself, but a car is, again, the initial identity of these cars came from surveillance tape, not from the tracking, but that a car, looking like his car, was in the vicinity of the robberies. And then they ultimately obtained a search warrant and effectively raided and seized property. But they had no evidence that he ever accessed that storage unit. The little property that they found at his house, the two cars that they've been tracking, they found no stolen property. And the house he shared with other individuals. And there are other individuals had access to the storage unit if Mr. Lewis ever even accessed it at all. There was no evidence of that at trial. So that's how we think it was highly prejudicial to him. We think had the Delaware Supreme Court been presented with the Fourth Amendment issue and presented with, in connection with that, this prejudice, that there's a reasonable probability that they would have reversed, which is the different outcome you need under Strickland, and things would have turned out differently for Mr. Lewis. I say I've gone way over my time, but I was trying to answer your Honor's question, so. All right. We'll get you back on the phone. Thank you, Your Honor. Good afternoon, Your Honors. Brian Arbon on behalf of the appellees, state respondents. May it please the Court. The Delaware Supreme Court's determination that Lewis's appellate counsel was not constitutionally ineffective was not contrary to, nor was it an unreasonable application of clearly established federal law, nor was it to the extent there are any factual determinations on a reasonable determination of the facts. I think it bears mentioning that to bring this, this is not an ordinary proceeding as if this was a federal collateral proceeding on appeal. Instead, we have to contend with two layers of deference here. There's one layer of deference for counsel's decisions in this case, that they were professionally reasonable. There's a second layer of deference that is afforded to the state court's decisions in this case. Under this doubly deferential standard of ADEPA, the Delaware Supreme Court's decisions must be given the benefit of any doubt. In fact, under this, under this rubric, this court must not only determine what arguments supported what the Delaware Supreme Court did, but what arguments could have supported. And based upon that, those determinations determine whether any theories or arguments, or whether fair-minded jurors could disagree that those theories or arguments were contrary to, or were inconsistent with, a holding of the United States Supreme Court. So the Delaware Supreme Court has determined in this very case that the extraterritorial monitoring of the vehicles connected to Lewis were not authorized for a warrant, correct? No, I would disagree with that. I would disagree with that determination. The Delaware Supreme Court, they were on direct appeal. The Delaware Supreme Court found that there was an argument raised that the warrants violated 11 Delaware Code 2304, which is the state statute regarding the jurisdiction. The Delaware Supreme Court found that those warrants did not violate Section 2304 because they were not facially invalid, and because they provided that the tracking device were to be installed in Delaware, which they were. The constitutional arguments were not reached. The state constitutional argument was found to be waived because it was not- I'm not asking you about the constitutional arguments, though. I'm going to just read the quote. It says, the GPS warrants did not authorize monitoring of the GPS beyond the jurisdictional limits of Delaware. So how is that not saying that the extraterritorial monitoring was warrantless? Well, it wasn't warrantless because there was a warrant that was obtained. The question would be whether, as far as the- whether the actions of the police exceeded the scope of the warrant, not whether that constituted a warrantless- Okay, so did the actions of the police exceed the bounds of the warrant? Well, the state would argue that that's an uncertain question as to what are the scope. Now, certainly, there's one- there's one, you know, as your Honor seems to perhaps believe, that the Delaware Supreme Court has made that finding. However, as far as with the scope of the warrant, the warrant only provided that the warrant authorized- you know, the warrant basically provided for- the warrant was silent, basically, on whether- did not expressly authorize that extraterritorial monitoring. So it was silent- it was silent on that issue, and so there is an open question as to whether the scope of the warrant was actually, in this case, violated. Freeman's question is, isn't the best reading of the Delaware Supreme Court's opinion that it did understand this to be a search beyond the scope of the warrant, and we have to defer to a state court on the reading of state law? Well, that would be- well, if it made a determination it was beyond the scope, then yes, there would be deference afforded to that. But then where would that leave us? And that is kind of where the state gets to the other arguments, that Jones was- at bottom, Jones involved a warrantless search. Jones did not decide the issue about the ramifications of an extraterritorial search, or extraterritorial GPS monitoring, excuse me. The other decision, the Jacob decision from Ohio, that was, as the Delaware Supreme Court pointed out, that was equivalent to basically authorizing the search of a residence in another state. So that did not necessarily touch upon or deal with the issue here, which is the extraterritorial GPS monitoring. But isn't unauthorized monitoring, an unauthorized search, isn't it something that really long predates Jones, and just the decades and generations of Supreme Court authority saying that warrantless searches are not constitutional, but for very, very limited exceptions? This is not a warrantless search. At most, this was an issue as to whether the police exceeded the scope of the warrant. Because if you look at- because the search happened in Delaware, obviously if you look at under Jones, because he had the placement of the device, and he had the use of the device within Delaware. But again, Jones involved warrantless search. It didn't involve where the police, in this case, went out and actually obtained a search warrant. So you're drawing the distinction as between failure to get any warrant at all and getting a warrant that just happens not to cover all of the monitoring that the police do. Well, whether it covers all the monitoring, I think the state response would argue would be an open question. But assuming it did not cover- Delaware Supreme Court has answered that for us, and we have to defer to their findings of fact. Well, that is correct. But let's assume that that is- that given- do that deference word, does that necessarily leave us? Because does that necessarily leave us with a Fourth Amendment violation? And as the state respondents pointed out in their brief, there is substantial federal authority that basically says that this is not a Fourth Amendment issue. That at most, that this may be as far as a violation of state law, but just because you violate a search warrant, arguably, does not mean it's a violation of the Fourth Amendment, because the Fourth Amendment by itself is concerned primarily with obtaining- with the warrant under warrant required, that the warrant be supported by probable cause, that the warrant- there be a nexus between the- between the criminal activity item, in this case, to be searched. Two things here. One of them is the 7th and 11th Circuit, hey, it's a state law violation, doesn't necessarily translate into a Fourth Amendment violation about what the presumptive scope is. But there's another one, which is under knots. It wasn't understood to be a search just to monitor a vehicle that is in a public place on the roadway. Now, Jones says, okay, placing the device search, but Jones avoids overturning and saying that the simple monitoring on a public roadway is itself likewise a Fourth Amendment search, unaccompanied by, say, the warrantless placement of a GPS device. So the factual situation is different here from the one that Jones found to be a search. That's absolutely correct. And in fact, as the Delaware Supreme Court pointed out in interpreting Jones, it left unanswered the question as to whether the GPS device emitting data, as far as it travels, amounts to a search. And that gets back to the other point, that in order to reach that determination, there would have to be a change in constitutional jurisprudence, which would basically find that there's a reasonable expectation of privacy in the person's whereabouts in a public roadway, and that therefore, based upon that reasonable expectation of privacy, the GPS device emitting and transmitting data would have in and of itself amounted to a search. And that, and as the Delaware Supreme Court pointed out, there is a dearth of any, as far as guidance, as far as on that issue. And appellate counsel was only responsible for directly controlling precedent. Okay, we've got your argument on that. You can wrap up, but at some point, I do want you to talk to, let's assume there was a violation. Let's assume it makes it past the double deference. What evidence is there that, you know, there was no prejudice here, that there's enough evidence independent of, you know, what was recovered as a result of the monitoring that the conviction could stand regardless? Well, there was substantial evidence to do so trial, and I know that my friend makes a big issue regarding the identification in this case. But identifications are a question of credibility for the jury. So the jury in this, and the witness identified, who is kindly identified, the defendant as being the perpetrator in that case. And the jury credited that determination that was within the province of the jury to credit the identification. Furthermore, there's a modus operandi that these burglaries shared a lot, that they occurred in affluent, high-end areas, that they also involved often entry into second-story windows, that they involved the taking of jewelry and the theft of pillowcases. So I think the modus operandi does provide really probative evidence, substantial evidence of this guilt. There's also the surveillance video that was taken, and the jury certainly could have inferred that based upon the surveillance video, which showed the white Lexus in close proximity to where some of the burglars occurred, that the white Lexus was the defendant's. But furthermore, there was also stolen merchandise that was found in the defendant's storage unit in Delaware. And certainly, no one's contesting that the police were not able to have tracked that his vehicle to the storage unit in Delaware. There's also just substantial evidence of this guilt in general, in such that any error in that case in admitting the out-of-state GPS would have been harmless. And as far as with the victim and the Ragnar, I know that makes a lot of... My friend does contest as far as the ability to admit the evidence from Metals New York, which was a New York, I guess, broker in jewelry. At bottom, that evidence was attenuated. And the reason why it's attenuated is because attenuated doesn't assume but for. Attenuation is in spite of. So it doesn't mean that just because there was a link between the GPS monitoring that tracked his vehicle into Ragnar, and the police's communication with the Ragnar police, and ultimately the victim in the Ragnar burglary finding her jewelry, does not mean that that evidence, because but for those contacts, would not have been discovered, is inadmissible. Instead, there's certain things that must be considered. There's a temporal consideration, which the victim in Ragnar, I believe, in the record in the search warrant, found the jewelry on the eBay website linked to Metals New York about a month after the GPS tracking occurred. There's also the fact that... The Delaware police never would have found out about that but for a call from the Ragnar police, because they initiated contact with out-of-state police agencies. Well, but it's not but for, for attenuation doctrine to apply. There just has to be... The attenuation doctrine only requires that the poisonous taint from the allegedly illegal activity and has dissipated based upon the causal connection between the alleged illegal activity and the challenged evidence have become sufficiently attenuated. And in this case, the evidence is attenuated. It's not a but for standard, it's in spite of. So you also have that piece of the puzzle. That evidence would have been admissible, Metals New York, the evidence from that location, based upon the attenuation doctrine. And that further provided evidence of his guilt in this case. I also want to briefly address Menino. Menino did fault appellate counsel for not raising a claim of obvious merit. But if you look at Menino, there was the obvious merit stemmed in part from the fact that there was controlling precedent on the sentencing issue. And here we don't have controlling precedent regarding the extra-territorial GPS monitoring in this case. And so the state response would argue that that is one important distinction between this case and Menino, is the dearth of guidance from either the United States Supreme Court or from the Delaware Supreme Court on the issue of extra-territorial GPS monitoring. So if this court does not have any further questions, the appellees would respectfully request that this court affirm the judgment of the district court. Thank you, Your Honor. And for the record again, Matthew Harvey. Can I get back to deficient performance? What is there here that would cause us to say that the Delaware Supreme Court was wrong in determining the counsel was not ineffective? What is the kind of aha moment to say, you know, counsel really should have raised this, and that determination by the Delaware Supreme Court is just totally unreasonable? What is it here that is your best shot at saying, that's why the Delaware Supreme Court was wrong? In terms of the unreasonable performance of counsel, I think it does go back to Menino. In this court, the court said that in Menino, it doesn't matter whether it was sufficiently, it was not a question of anticipating a change in the law, what the law may have been at the time when this substantial issue... It's here. What was it about the state of the law regarding the need for a warrant and the extraterritorial nature of a warrant that says, of course, counsel was deficient because, of course, this was an argument that should have been made? There's really no support for that, is there? I do think Menino actually is great support for that because what Menino was saying is that regardless of whether this would have required... Your Honor's question, I think, is getting at, and I want to put words in your mouth, is that if you accept that there was insufficient precedent out there to render this obvious, then you normally say, well, counsel's not required to anticipate a change in law. And what Menino says very clearly is that this is not a case of counsel failing to anticipate a change in the law because counsel in this appeal raised these issues in the trial court and therefore, as trial counsel, preserved them for appeal. They were evident from the record in the trial court, and then they simply, without good reason, failed to raise them on an appeal. And in Menino, just like here, there were affidavits in the post-conviction habeas proceedings as to why appellant counsel made those decisions, and they had no good reason. It has to have been a valid argument, or at least certainly not a totally novel argument. We can say it wasn't a totally novel argument. We think at most it was a logical extension of existing case law and existing principles on the extent of what a warrant should cover. The four cases that were decided all had situations where the warrant said, and you need to get it here in Delaware and only use it in Delaware. I mean, they all had actual restrictions on the location of the use of the warrant. This was totally silent. They just put, you can put it on, you know, put the GPS in Delaware. And the four cases that had specific locations still found it wasn't unconstitutional because it only has to do with particularity and probable cause. So I don't know what case would make it at all a creditable argument to make. I'm not sure that's correct, Your Honor, because one of the cases, I think it was the Ohio case that authorized, I understand the distinction in the facts here, authorized the search, the warrant itself authorized the search of a property in California and that warrant was found to be unconstitutionally invalid because it exceeded the scope of the jurisdiction. Yeah, there was no jurisdiction. You know, I can't, a judge in Pennsylvania cannot authorize a warrant to be issued in Delaware. I mean, that's kind of clear. But there's nothing that says here that once you have a valid warrant and it crosses state lines, somehow the validity of the warrant goes away. There's no, I don't know of any case that stands for that proposition. I think it goes back, it harkens back to the case law from two centuries ago that says that a warrant that exceeds the jurisdiction of the magistrate that issues it is warrantless. But the warrant didn't. Right, that's a situation where an Ohio judge says search in California. This is one where a Delaware judge says place in Delaware, search in Delaware. It didn't even say search in Delaware, it just said place in Delaware. Place in Delaware. And then maybe it's the case that they should have stopped after the car crossed into Pennsylvania. But that's a, it is a distinguishable situation. Again, I think that we go back to the, I think we're looking here at the underlying merits of the argument, not whether it was obvious for counsel to raise it and counsel was deficient in raising it. Well, the underlying merits are going to determine whether... That goes more to the prejudice prong, I think. Well, but the underlying merits are going to determine whether counsel's performance was deficient and ineffective for failing to raise it. But if it is a novel theory, which to my mind it is, I don't know of any proposition that says that if a warrant is issued here on a car, I mean the GPS is on the car, once the car goes into New Jersey, poof. I don't know. I don't think there's any support for it in the law. It seems to me that the practice is that they establish physical surveillance. But I can't speak to whether there's a particular case in New Jersey in your example. But I do think what we're getting hung up on here is this was not... Many of the cases of dealings theory talk about counsel not having to raise every potential meritorious argument and of course not having to raise frivolous or non-meritorious. No one's saying this is a frivolous or non-meritorious argument. There's certainly merit. It's certainly, we believe, a logical extension of Jones and the existing case law. And what rendered it obvious here was the fact that it was raised below, discussed over an hour. Let's say you're right. Let's say it is a plausible argument for extending. But I thought counsel didn't have an obligation. Menino's a situation where it's violating the law that's there. So do you have authority that says they have an obligation to raise plausible arguments for extension of existing law? I don't have it off the top of my head. I believe we cite some of that in our brief. But I think more fundamentally here, counsel submitted a Rule 61 affidavit, which is the affidavit appellate counsel under Delaware law in the Delaware state habeas proceedings. And it's a very short affidavit. And in that affidavit, trial counsel submitted one too. And trial counsel avers in that affidavit that he did in fact raise these constitutional issues. And appellate counsel acknowledges he did not raise the continuous monitoring argument or the flip side of that coin, the judge's reason for denying it, the attenuation doctrine. And he offers no reason for failing to do that. So I don't think you get into the situation here where there was a strategic or good reason why they failed to raise it. Counsel's affidavit is effectively just acknowledging he failed to raise it with no explanation that he viewed, as your honors have been suggesting, that potentially this was not an argument that was supported by clear governing precedent. So I think that's the failure here that counsel had and counsel admitted that failure. Thank you. Mr. Harvey, were you and your firm appointed in this case? Yes. We thank you for your service to the court, to the justice system. It's in the highest traditions of bar that you do such work. And it's terribly important for our adversarial system of justice. And with that, we will recess. We'll take the matter in advisement. I think we'll recess until tomorrow at 930. But first, we'd like to greet both counsel at sign. Thank you, your honor. It's been a pleasure.